**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: July 14, 2020
Date Decided: July 14, 2020

William B. Chandler III, Esq.
Lori W. Will, Esq.
Shannon E. German, Esq.
Jessica A. Hartwell, Esq.
Jeremy W. Gagas, Esq.
WILSON SONSINI GOODRICH
 & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801

Kenneth J. Nachbar, Esq.
William M. Lafferty, Esq.
Ryan D. Stottmann, Esq.
Sara Toscano, Esq.
Sarah P. Kaboly, Esq.
MORRIS, NICHOLS, ARSHT
 & TUNNELL LLP
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801

Re: *Forescout Technologies, Inc. v. Ferrari Group Holdings, L.P.*
*& Ferrari Merger Sub, Inc.*, C.A. No. 2020-0385-SG

Dear Counsel:

I have reviewed the Defendants' request that I certify an interlocutory appeal of my rulings of July 10, 2020 and July 13, 2020, and the Plaintiff's opposition. An Order consistent with Supreme Court Rule 42 is attached, certifying in part the interlocutory appeal. This brief Letter Opinion supports that Order.

In this Action, Plaintiff Forescout Technologies, Inc. ("Forescout") seeks injunctive relief to compel the Defendants to consummate a merger. The matter has been expedited to accommodate this request. There are, unsurprisingly, numerous issues, but as the Defendants point out in their memorandum seeking interlocutory appeal, primary is whether Forescout has suffered a material adverse effect ("MAE")

under the terms of the merger agreement. The parties appear to have negotiated the merger agreement in light of the pending COVID-19 pandemic, and agreed to limit—but not eliminate—the extent to which a pandemic could constitute a MAE. A trial is set for Monday–Saturday, beginning July 20, 2020. According to Forescout, to preserve the possibility of equitable relief, an opinion must issue by August 6, 2020.[1]

The trial date was imposed on May 28, 2020.[2] At that point, I was hopeful that viral conditions would abate by July 20. Manifestly, that hope has proved misplaced. On July 7, 2020, I held a teleconference with the parties and encouraged them to conduct as much of the trial as possible remotely, to limit potential COVID-19 exposure. The parties agreed to discuss the matter. At a telephone conference on July 10, 2020, counsel for the Defendants raised a specific concern about travel to Georgetown—a COVID-19 "hot spot."[3] In a letter submitted in advance of that telephone conference the Defendants also sought to continue the trial.[4]

At that point—absent a continuance of the trial—the Defendants sought two to three days of live trial testimony, with the remainder of trial occurring remotely.[5]

---

[1] The Termination Date as set forth in Section 8.1(c) of the merger agreement was extended to 11:59 p.m. on August 6, 2020 as the result of the entry of a stipulated order for entry of a temporary restraining order. Order, D.I. 17, at 4.

[2] Tr., D.I. 100, at 7:16–8:10; *see* Stip. and Order Governing Case Schedule, D.I. 51.

[3] Application For Certification Of Interlocutory Appeal, D.I. 155, Ex. A ("Application"), at 11:17–12:2.

[4] Letter, D.I. 139.

[5] Application, Ex. A, at 12:6–12:16.

The Plaintiffs were content to conduct the entirety of the trial remotely via Zoom. Upon hearing the Defendants' Georgetown-specific concerns, I offered the parties the option of as much live trial time as they desired (again, at that point, the Defendants sought two to three days)[6] in Georgetown or a single day of live trial in Wilmington—with the remainder of the trial to be conducted remotely via Zoom— but I declined to continue the trial. In refusing to continue the trial, I noted that doing so would render the equitable relief sought by Forescout practically unattainable.[7]

Also during the Friday, July 10 teleconference, I directed the parties to inform me early on Monday, July 13 how much testimony could be submitted remotely, via Zoom, and their election regarding live trial in Wilmington or Georgetown. Instead, yesterday afternoon the Defendants filed a motion to require one of the Plaintiff's witnesses—Christopher Harms, Forescout's Chief Financial Officer—to travel to Wilmington for live cross-examination.[8] Per Forescout, Mr. Harms is unwilling to travel from California to Delaware due to health concerns.[9]

---

[6] Necessarily, such live trial time would only be applicable to witnesses who agreed to attend trial in person, as I noted that given the public health crisis I was "not going to force anybody to come here." *Id*. at 13:24–14:1.

[7] *Id*. at 12:23–13:7 ("I appreciate the defendants' offer to extend the closing date, but it is a reality—and I think we're all aware of it—that the longer this plays out, the lower the chances that this deal can go through. That's just practical. The initial terms will be so stale after a trial in October that I think the likelihood is practically zero that the type of relief that the plaintiff is seeking here can be achieved.").

[8] This was, I infer, Defendants' election of Wilmington as the live trial situs, but with the condition that Mr. Harms be compelled to appear in Wilmington in person.

[9] Application, Ex. B, at 3:19–4:8.

3

In the current health environment, I found Forescout's reasoning persuasive. While the Defendants insist that cross-examination of Mr. Harms is necessary to their case, on balance I determined that justice would best be served with a remote presentation of Mr. Harms' cross-examination. I made it clear that the Defendants could have counsel in California cross-examine Mr. Harms in person (with appropriate precautions in place) but that I would preside remotely. I note that the Defendants have failed to identify any reason why such a cross-examination of Mr. Harms would not be sufficient to the administration of justice.

I perceive the questions presented by the Defendants that I hereby certify for interlocutory appeal as twofold. First is a broader question: given the current public health situation may I rightly decide to accept trial testimony remotely? Second is a question specific to Mr. Harms: was my denial of the Defendants' request to compel Mr. Harms to travel from California to Delaware so that Mr. Harms may be cross-examined live in court within this Court's discretion?

"[A]n interlocutory appeal will not be certified 'unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment.'"[10] "Interlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and

---

[10] *JPMorgan Chase Bank, N.A. v. Ballard*, 214 A.3d 449, 451 (Del. Ch. 2019) (quoting Supr. Ct. R. 42(b)(i)).

4

can threaten to exhaust scarce party and judicial resources.  Therefore, parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[11]  I am to consider eight criteria in deciding whether to certify an interlocutory appeal.[12]

Among these eight criteria is whether "[t]he interlocutory order involves a question of law resolved for the first time in this State."[13]  The COVID-19 pandemic has presented unprecedented challenges for our State and Nation, and our Court has not escaped such difficulties.  Even so, this Court has proceeded to conduct business virtually throughout the pandemic, principally over telephone and Zoom.  We remain in Phase II of our Supreme Court's reopening plan for Delaware's courts.[14] During Phase II, the Supreme Court's current order extending the judicial emergency owing to the COVID-19 pandemic permits "[c]ivil hearings that require the participation of witnesses or clients," but concurrently "encourage[s] . . . the use of video and audio conferences whenever possible."[15]  Consequently, while the

---

[11] Supr. Ct. R. 42(b)(ii).
[12] Supr. Ct. R. 42(b)(iii).
[13] Supr. Ct. R. 42(b)(iii)(A).
[14] Administrative Order No. 8, In re: COVID-19 Precautionary Measures (Del. July 6, 2020).
[15] Administrative Order No. 7, In re: COVID-19 Precautionary Measures (Del. June 5, 2020), at 5–6; *see id.*  The Supreme Court's authorization of the use of audiovisual devices for court proceedings is permitted by statute, as 10 *Del. C.* § 2008 provides that "[d]uring a judicial emergency, the Chief Justice is authorized to permit, by order, the use of audiovisual devices for all civil and criminal proceedings except trial by jury, whether or not such use is currently permitted by statute or court rule."

Supreme Court's current order allows me to hold this trial live should I determine to do so, it also encourages the use of virtual means "whenever possible."[16]

Whether trial testimony may be taken virtually consistent with the Defendants' due process rights is a question of law that, to this point, has yet to be resolved in this State. It is a question that, having considered Supreme Court Rule 42(b)(iii)'s criteria is, in my view, proper for interlocutory review by the Delaware Supreme Court.

Likewise, whether Mr. Harms may be compelled to testify live presents many of the same issues as the general question, and for the same reasons I also certify the question as applied to Mr. Harms for interlocutory review. The burden for a witness compelled to testify live has necessarily risen to a greater magnitude in the current public health climate, particularly where such live testimony would require cross-country travel.

Because the Defendants have raised due process concerns regarding the right to live cross-examination, because Mr. Harms is a key Plaintiff witness, and because the overarching issue presented—whether a decision to take trial testimony remotely is consistent with due process and within the trial court's discretion—is one of first

---

[16] The Supreme Court's latest order extending the judicial emergency states: "In light of the continuing threat COVID-19 poses to public health, all courts in the State are authorized, to the greatest extent possible under 10 *Del. C.* § 2008, to continue to utilize audiovisual devices at their facilities and remotely to conduct proceedings (except for jury trials) for the duration of this order." Administrative Order No. 8, In re: COVID-19 Precautionary Measures (Del. July 6, 2020), at 3.

impression,[17] I find that the "likely benefits of interlocutory review outweigh the probable costs,"[18] and the interest of justice supports interlocutory review.[19]

To the extent the Defendants seek review of my decision to deny their request to continue the trial, that is a matter within the discretion of the trial court,[20] and does not meet Supreme Court Rule 42(b)(iii)'s criteria. That decision, therefore, does not merit interlocutory review under Supreme Court Rule 42.[21]

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[17] Supr. Ct. R. 42(b)(iii)(A).

[18] Supr. Ct. R. 42(b).

[19] Supr. Ct. R. 42(b)(iii)(H). I note that, though the Defendants urge me to do so, I decline to find the criterion in Rule 42(b)(iii)(B), that "[t]he decisions of the trial courts are conflicting upon the question of law," has been met here, because this Court has not previously encountered the precise circumstances presented here.

[20] *Valentine v. Mark*, 873 A.2d 1099 (Del. 2005) (TABLE); *see In re Asbestos Litig.*, 2020 WL 1465924 (Del. Mar. 24, 2020).

[21] Consequently, should the Supreme Court determine that the trial must be held live to comport with the Defendants' due process rights, the Court is prepared to do so in Georgetown on the dates scheduled.